Filed 9/14/20  Reese v. Select Portfolio Servicing Inc. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION 4

| | |
|---|---|
| JEANIE REESE, as Conservator, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> SELECT PORTFOLIO SERVICING, INC. et al., <br><br>     Defendants and Respondents. | A155500 <br><br> (Solano County <br> Super. Ct. No. FCS048090) |

## I.   OVERVIEW

Plaintiff Jeanie Reese is the conservator for homeowner Leoma Musil. After Select Portfolio Servicing, Inc. (SPS) filed a notice of trustee's sale and began foreclosure proceedings against Musil's property, Reese sued SPS on Musil's behalf based on alleged violations of the Homeowner's Bill of Rights

1

(Civil Code[1], §§ 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20 (HBOR)) and California's Unfair Competition Law (Bus. and Prof. Code, §§ 17200 et seq. (UCL)).  SPS filed a motion for summary judgment or summary adjudication.  The court granted summary judgment, holding that Reese failed to establish a triable issue of material fact on her claims.  We disagree and shall therefore reverse and remand.

## II.    BACKGROUND

Musil owns a property in Vacaville, which secures a mortgage loan. SPS is the servicer for the mortgage.  Musil's niece, Reese, serves as Musil's conservator.[2]

### A. *2014 Notice of Default and 2016 Release*

In August 2014, SPS recorded a notice of default on Musil's property. Musil responded by suing SPS and Deutsche Bank, the assignee of the Deed of Trust on the property, for charging unlawful fees and failing to properly evaluate her for foreclosure prevention alternatives, including a loan modification.  In August 2016, the parties settled the action.  As part of the settlement, Reese and Musil agreed to release SPS from any and all claims,

---

[1] All further statutory references are to the Civil Code unless otherwise specified.  The relevant facts in this case transpired in 2016, so if a statute has been amended since that time, we cite to the version in effect in 2016 and refer to it as the former statute.  Some of these statutes expired or reverted to different versions in 2018 pursuant to sunset provisions.  (See, e.g., former § 2923.6, subd. (k).)  However, the Legislature consolidated and reenacted the pre-2018 versions of the statutes, with minor changes, effective January 1, 2019.  (Legis. Counsel's Dig., Sen. Bill No. 818 (2017–2018 Reg. Sess.) Stats. 2018, Summary Dig., p. 95.)  The Legislature's reenactment included a savings clause stating the Legislature intended that claims under the pre-2018 versions of the HBOR be allowed to proceed.  (Stats. 2018, ch. 404, § 26.)

[2] All of Reese's actions in this case were taken on Musil's behalf, so for simplicity we will not mention further Reese's role as Musil's conservator.

2

defenses, and/or counterclaims that they had asserted or could have asserted in the lawsuit.

### B. SPS's Notice of Trustee's Sale

On September 14, 2016, SPS recorded a notice of trustee's sale against Musil's property. In response, Reese submitted a request for a loan modification application to SPS on September 23, 2016.

On September 27, 2016, SPS sent Reese a document titled, "Required Information Notice," which stated that her loan modification application was not complete and requested additional documents and information. In this letter, SPS informed Reese, "If you have any questions, your assigned Relationship Manager, Matt Enright, can be reached toll-free at" a phone number and extension or by email. The letter also stated, "At SPS, any of our trained servicing representatives can assist you with answers to your questions and the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department." SPS included a toll-free number for the Loan Resolution Department.

Reese asserted she spoke to Enright, who told her that the "loan modification application would be complete" once she submitted certain documents. Reese claimed she timely "submitted the requested documents to SPS to complete [her] loan application."

In a letter dated November 11, 2016, SPS told Reese it had denied the loan modification application. SPS explained it "did not evaluate [Musil's] account" because SPS "did not receive the required documents within the timeline specified." SPS notified Reese of her right to appeal the decision. The letter stated that during the window for her appeal "[a]ny pending foreclosure action [might] continue, however, no foreclosure sale [would] be

3

conducted and [Musil would] not lose [her] home during this 30-day period." SPS received an appeal in a letter dated November 30, 2016. On December 3, 2016—prior to the expiration of 30 days from the November 11, 2016 letter— SPS denied the appeal, repeating its statement that it was unable to approve a loan modification because it did not receive the required documents within the specified time. In addition, the letter stated that the foreclosure sale was scheduled for December 12, 2016, would proceed as scheduled, and would not be postponed.

## C. Reese's Complaint

To stop the foreclosure sale, on December 6, 2016, Reese filed a complaint against SPS alleging violations of the HBOR and UCL. With respect to the HBOR, Reese claimed that SPS had not complied with "California *Civil Code* sections 2923.5, 2923.6, 2923.55, and 2932.5 *et seq.*" Reese also claimed that by recording the notice of default and notice of trustee's sale in violation of the HBOR, SPS had engaged in unlawful, unfair, and fraudulent practices under the UCL.

## D. Trial Court's Decision on the Motion for Summary Judgment

The trial court granted SPS's motion for summary judgment. The trial court dismissed Reese's claims under former sections 2923.5 and 2923.55, and section 2932.5 because they were subject to the release provision in the settlement agreement that ended Musil's 2014 lawsuit.[3] The trial court concluded that the only HBOR claim not covered by the release was Reese's

---

[3] Former sections 2923.5 and 2923.55 prohibited mortgage servicers from recording notices of default before contacting the borrower and providing the borrower with written information about foreclosure and alternative mitigation options. Former section 2932.5 vests in the mortgagee or its assignee the power to sell real property that is the subject of the mortgage. None of these statutes is at issue in this appeal, as Reese does not argue that the trial court erred in granting SPS judgment on these claims.

4

claim that SPS violated former section 2923.6 by engaging in "dual tracking." The court explained that former section 2923.6 prohibited "the recording of a notice of default, the recording of a notice of sale, or carrying out a trustee's sale while a 'complete' loan modification application is pending." Without addressing whether Reese's application was complete, the trial court ruled that Reese could not establish that SPS took any action prohibited by former section 2923.6 because she admitted she submitted her loan modification application after the recording of the notice of sale and it was undisputed that SPS had not carried out a trustee's sale before Reese filed suit. The court found that Reese's UCL claim was predicated on and derived from her HBOR claim, so the court disposed of the UCL claim as well.

## III.  DISCUSSION

Reese asserts the court erred when it granted SPS's motion for summary judgment because there were triable issues of material fact about whether SPS violated former section 2923.6's prohibition on dual tracking and former section 2923.7's requirement that a mortgage servicer provide a borrower a single point of contact to discuss a loan modification application. We reject Reese's reliance on former section 2923.7 because she did not plead that theory in her complaint. But we agree with her that she presented sufficient evidence to support her HBOR cause of action based on former section 2923.6 because the record shows SPS recorded a notice of sale while Reese's loan modification application was pending. Reese also presented sufficient evidence to establish a triable issue of material fact as to whether her loan application was complete, so SPS was not entitled to summary adjudication of her HBOR cause of action. Additionally, the trial court erred in granting SPS summary adjudication of Reese's UCL claim, in part because her UCL claim was predicated on her HBOR claim.

5

## A. Standard of Review

On appeal of an order granting summary judgment, we independently review the trial court's ruling by applying the "same legal standard as the trial court." (*Araquistain v. Pacific Gas & Electric Co.* (2014) 229 Cal.App.4th 227, 231.) We likewise review questions of statutory interpretation de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082.)

## B. Applicable Legal Principles

### 1. Summary Judgment

Motions for summary judgment or adjudication are governed by Code of Civil Procedure section 437c. In relevant part, subdivision (c) of section 437c states that a motion for summary judgment "shall be granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The party moving for summary judgment has the initial burden of producing sufficient evidence to demonstrate that a cause of action lacks merit because one or more elements cannot be established. (*Ibid.*; *Tesselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168–169.) If the moving party carries this burden, the burden then shifts to the party opposing summary judgment to make a prima facie showing of a triable issue of material fact. (*Aguilar*, at p. 850.)

The court must consider all the evidence in the papers and all reasonable inferences deducible therefrom. (Code Civ. Proc. § 437c, subd. (c).)

6

On appeal, we review the evidence in the light most favorable to the losing party by "liberally construing [the losing party's] evidentiary submissions [and] strictly scrutinizing [the other party's] own showing." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) All evidentiary doubts or ambiguities should be resolved in the losing party's favor. (*Ibid.*)

## 2. Homeowner's Bill of Rights

The Legislature first enacted the Homeowner's Bill of Rights in 2012, with an effective date of January 1, 2013. (Stats. 2012, ch. 87; *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.) The HBOR's purpose was "to ensure that, as part of the nonjudicial foreclosure process, borrowers [were] considered for, and [had] a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (Former § 2923.4, subd. (a).) In addition, the HBOR attempted to eliminate dual tracking, which occurs when financial institutions pursue foreclosure while evaluating a borrower's loan modification application. (*Alvarez v. BAC Home Loans Servicing, L.P.* (2013) 228 Cal.App.4th 941, 950.) At issue in this appeal are former sections 2923.6 and 2923.7 of the HBOR.

Former section 2923.6 prohibited mortgage servicers from engaging in dual tracking. It provided in relevant part, "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." (Former § 2923.6, subd. (c).) The statute required mortgage servicers to give borrowers 30 days to appeal the

7

denial of a loan modification application and to provide evidence that the denial was in error. (Former § 2923.6, subd. (d).) It further provided a mortgage servicer could not "record a notice of default or notice of sale or conduct a trustee's sale until" the servicer denied the application and the period for an appeal expired, the borrower did not accept an offered modification, or the borrower accepted a modification but defaulted on the obligations of the modification. (Former § 2923.6, subd. (c)(1)–(3).)

Former section 2923.7 required mortgage servicers to provide borrowers with effective and efficient communications. Subdivision (a) provided that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." (Former § 2923.7, subd. (a).) The statute defined "single point of contact" as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities" of communicating with the borrower about foreclosure prevention alternatives. (Former § 2923.7, subd. (e).) Each member of the team was required to be "knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." (Former § 2923.7, subd. (e).)

### 3. UCL Claim

California's UCL generally provides for equitable and restitutionary relief from unfair competition, which the UCL defines as any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, §§ 17200, 17203; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 (*Cel-Tech*).) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats

8

them as unlawful practices' that the unfair competition law makes independently actionable."  (*Id.* at p. 180.)

## *C. Analysis*

### 1.  Former section 2923.6 Claim—Dual Tracking

The trial court dismissed Reese's claim under former section 2923.6 because it was undisputed that Reese had submitted her loan modification application after SPS recorded the notice of sale in September 2016 and SPS had not carried out a trustee's sale before Reese filed her complaint.  The trial court thus implicitly interpreted former section 2923.6's prohibition on "conduct[ing] a trustee's sale" while a loan modification is pending as preventing a mortgage servicer only from engaging in an actual sale. (Former § 2923.6, subd. (c).) In this court, Reese argued that the trial court should have read the statutory phrase "conduct a trustee's sale" broadly to include preparatory steps in the foreclosure process short of the actual sale, while SPS defended the trial court's narrower approach.

After reviewing the record, we observed that the document both parties cited as the September 2016 notice of sale indicated it was in fact recorded on November 10, 2016.  We invited the parties to submit supplemental briefing addressing (1) whether we should take judicial notice of the actual September 2016 notice of sale and (2) whether the November 2016 notice of sale, already in the record, created a triable issue of material fact concerning whether SPS violated former section 2923.6.  Reese took no position on whether the September 2016 notice of sale was subject to judicial notice and argued only that the November 2016 notice of sale was evidence that SPS violated former section 2923.6.  SPS provided a copy of the September 2016 notice of sale and

9

argued it was subject to judicial notice.[4]  It further argued that because Reese never submitted a complete loan modification application, the November 2016 notice of sale did not create a triable issue of fact concerning its alleged violation of former section 2923.6.

Because SPS does not dispute that it recorded a notice of sale on November 10, 2016, it is unnecessary to resolve the parties' dispute over whether SPS's preparations for foreclosure while considering Reese's appeal qualified as "conduct[ing] a trustee's sale" under former section 2923.6. Former section 2923.6, subdivision (c) prohibited mortgage servicers from "record[ing] a . . . notice of sale" while a complete loan modification application was pending.  The November 2016 notice of sale in the record is evidence, if not conclusive evidence, that SPS recorded a notice of sale while Reese's application was pending.[5]  If Reese's application were complete, this would be sufficient evidence to create a triable issue of fact concerning whether SPS violated former section 2923.6.  The viability of Reese's claim under former section 2923.6 therefore turns on the completeness of her loan modification application.  The trial court did not reach this issue, but we

---

[4] We take judicial notice of the September 2016 notice of sale attached to SPS's supplemental brief.  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 [existence and facial contents of recorded documents are properly subject to judicial notice under Evid. Code § 452, subd. (c) & (h)].)

[5] SPS does not argue that it would be improper to rely on the November 2016 notice of sale, even though Reese did not present that theory below and the court raised the issue sua sponte.  In any event, because the document is in the record, Reese's current reliance on the document is merely a change of legal theory, which we have discretion to permit.  (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341 [issue of law based on undisputed facts may be raised for the first time on appeal, and "[i]t makes no difference that the issue was first raised on appeal by the court rather than the parties"].)

must, because we must affirm the trial court's ruling if it is correct on any legal theory. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.)

We hold that there is a triable issue of material fact as to whether Reese's loan application was complete. SPS initially met its summary judgment burden on this issue by offering evidence demonstrating that soon after Reese submitted the application, SPS informed her it was incomplete. Similarly, SPS presented evidence that it eventually denied Reese's application because SPS had not received necessary documents within the specified review time. With this evidence, SPS shifted the burden to Reese to make a prima facie showing that the loan application was complete.

Reese carried this burden by declaring that she submitted a loan modification application to SPS and thereafter responded to all of SPS's requests for documents in a timely manner. She averred that Enright, SPS's relationship manager and designated single point of contact, requested a few additional documents and informed her that her application would be complete once those documents were provided. Reese attested that she submitted those documents. This evidence would be sufficient to establish that she completed her application, creating a triable issue as to this material fact.[6]

SPS's attacks on this evidence are not persuasive. It argues Reese's declaration is insufficiently specific, since she declared only that she "was told" that the application would be complete once she submitted additional

---

[6] SPS filed written objections in the trial court to Reese's declaration, but the trial court did not rule on them. The objections were therefore presumptively overruled, and SPS had the burden of renewing them on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) SPS has not mentioned its objections in any of its briefing, so we treat the issue as forfeited.

documents, without ever specifying precisely that SPS or one of its employees told her this. However, the preceding sentence in the declaration stated directly that SPS told Reese to submit certain documents, so her subsequent statement that she "was told that once [she] submitted" those documents the application would be complete seems naturally to refer to SPS. And in any event, the appeal of the denial of the loan modification application stated Musil "was told [SPS] had everything by [her] relationship manager," Enright. Liberally construing this evidence and resolving doubts or ambiguities in Reese's favor, as we must, we find it sufficiently supports Reese's position.

SPS also contends in various ways that Reese's failure to produce a copy of the completed application indicates it does not exist. SPS contends that Reese testified only that she "believe[d]" that "someone" had a copy of the completed application and she was unable to find the document in her files. SPS points out that in response to its discovery requests, Reese never produced a copy of the complete application or any of the necessary supporting documentation, such as a proof of income statement, tax form, or bank statement. SPS argues that one would expect Reese to have kept the originals of such documents and produced them, because she submitted documents to SPS via fax and email.[7]

---

[7] To prove Reese's practice of faxing documents to SPS, SPS provided new excerpts from Reese's deposition testimony that are not in the record and offered to provide more new evidence on this point. Because we conclude that Reese's practice of faxing documents would not overcome her declaration regarding the completeness of the loan modification application, it is unnecessary to consider this new evidence or remand to the trial court to allow SPS and Reese to prepare additional evidence on this point. (See Code Civ. Proc., § 437c, subd. (m)(2) [parties can request remand to present new evidence relevant to a basis for affirming summary judgment the trial court did not previously rely on].)

SPS's arguments are not persuasive. Reese's full testimony was that she "definitely believe[d]" there to be a completed application that was signed by her and her attorneys and dated September or October of 2016, so her testimony does not seem speculative. Reese also addressed the absence of the application from her records, explaining that she faxed documents from different locations and did not always scan documents into her electronic files. SPS asks this court to infer that Reese never submitted a completed application based on its absence from her files but fails to cite any authority making such an inference conclusive for summary judgment purposes over Reese's declaration to the contrary. Moreover, as Reese points out, one could draw a similar inference against SPS, as it is relying on its interpretation of Reese's evidence on this point rather than simply submitting a declaration that it never received the application or explaining why such a declaration was impossible. (Cf. Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"].)

SPS finally points out that former section 2924.10 required it to send a letter to a borrower acknowledging receipt of a complete loan modification application. It asserts it is undisputed that SPS never sent Reese such a letter. The lack of such a letter is equally consistent with SPS not keeping an accurate record of receiving Reese's completed application as with Reese not submitting it, so it adds little to the analysis. And furthermore, SPS's argument would allow a mortgage servicer to escape liability for violating former section 2923.6 by withholding a letter in violation of former section 2924.10, which is nonsensical.

In any event, we need not reconcile the conflicts between both sides' evidence and inferences on these points. It suffices for present purposes to note that both sides have evidence supporting their conflicting positions, thereby creating a triable issue of material fact.[8]

## 2. Section 2923.7 Claim—Single Point of Contact

We turn next to Reese's contention that she is entitled to reversal because there is a triable issue of fact as to whether SPS violated former section 2923.7 by failing to provide a single point of contact. We need not consider Reese's evidentiary arguments, however, because Reese did not plead a claim under former section 2923.7 in her complaint.

We may not consider new theories raised on appeal from the granting of summary judgment when that theory is not supported by the pleadings. (*Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1125.) Neither Reese's complaint nor her papers opposing SPS's summary judgment motion addressed her current contention that SPS violated former section 2923.7. Although Reese mentioned section 2923.7 in her complaint, the reference is merely in passing, in a paragraph describing various provisions of the HBOR. When she listed the statutes that SPS allegedly violated, Reese did not mention former section 2923.7. She instead stated only that "[d]efendants [had] failed to comply with the requirements of California *Civil Code* sections 2923.5, 2923.6, 2923.55, and 2932.5, *et seq.*" Reese's inclusion of the term "et seq." is too ambiguous to constitute an allegation that SPS violated former

---

[8] Because we have concluded there is a triable issue of material fact as to whether Reese submitted a complete application, it is unnecessary for us to address Reese's alternative argument that a mortgage servicer could have violated former section 2923.6, subdivision (e) by recording a notice of sale before the denial of a borrower's loan modification application even if that application was not complete.

14

section 2923.7.  Similarly, even if Reese's complaint had alleged a violation of former section 2923.7, Reese did not argue in opposition to the motion for summary judgment that there was a triable issue of material fact regarding whether SPS assigned her a single point of contact.  Reese argued only that she presented triable issues of material fact as to whether SPS complied with former section 2923.6, the prohibition on dual tracking.

### 3. UCL Claim—Unlawful, Unfair, or Fraudulent Practices

Reese alleged in her complaint that SPS's practices violated Business and Professions Code section 17200 because they were unlawful, unfair, and fraudulent.  In light of its determination that SPS was entitled to summary adjudication of Reese's HBOR cause of action, the trial court also rejected Reese's UCL claim as "derived from" the HBOR cause of action.  Because we hold that Reese has presented a triable issue of material fact on her HBOR claim under former section 2923.6, Reese's claim based on the UCL's "unlawful" prong cannot be so quickly dismissed.  In addition, even if SPS's conduct were ultimately found to be lawful under the HBOR, Reese could nonetheless succeed on her alternative UCL theories, raised both in her pleadings and in her briefing in opposition to SPS's summary judgment motion, that SPS's practices were unfair or fraudulent.  (*Cel-Tech*, *supra*, 20 Cal.4th at p. 181 [because the UCL is written in the disjunctive, a practice may be prohibited under the UCL if it is "unfair" or "deceptive," even if it is not "unlawful"].)

As an alternative basis for affirming the summary adjudication of Reese's UCL claim, SPS argues that Reese lacks standing to assert a UCL claim because SPS's alleged misconduct did not cause the alleged damage to Musil's credit, attorneys' fees, risk of foreclosure, and lost refinancing

15

opportunities. SPS contends these injuries, if any, arose instead from the failure to pay the mortgage on the property.

It is true that Musil risked foreclosure and might have suffered some damage to her credit even if SPS had properly disposed of the loan modification application. But if SPS's handling of that application caused some measure of additional damage to Musil's credit, logically such additional injury could give Reese standing to pursue a UCL claim, and SPS cites no authority to the contrary. Even accepting SPS's position for the purposes of argument, however, Reese also presented evidence that she hired counsel and filed this lawsuit to stop the foreclosure because of how SPS handled the application. Reese's claims in this case would not have been asserted but for SPS's actions in response to Reese's loan modification application. The costs of Reese's efforts to stop the foreclosure sale based on SPS's actions therefore represent a form of additional injury that is sufficient to give Reese standing for her UCL claim.

## IV. DISPOSITION

We reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

_____

BROWN, J.

WE CONCUR:


_____

STREETER, ACTING P. J.


_____

TUCHER, J.

*Reese v. Select Portfolio Servicing, Inc.* (A155500)

17